**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL BURNETT,

        *Plaintiff,*

   *v.*

KRISTY EELBODE, JANE DOE,
P. WARREN, and KEVIN HERRON,

       *Defendants*.

_____/

CASE NO. 18-CV-12471
DISTRICT JUDGE JUDITH E. LEVY
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**(ECF No. 49) AND MOTION TO SEAL (ECF No. 48), AND PLAINTIFF'S**
**MOTIONS TO COMPEL (ECF No. 44), FOR LEAVE TO FILE A SECOND**
**AMENDED COMPLAINT (ECF No. 53), AND FOR CIVIL**
**CONTEMPT (ECF No. 55).**

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants'

Motion for Summary Judgment (ECF No. 49) be **GRANTED**, Defendants' Motion to

Seal (ECF No. 48) be **DENIED**, Plaintiff's Motion to Compel (ECF No. 44) be

**DENIED**, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No.

53) be **DENIED**, and finally, Plaintiff's Motion for Civil Contempt (ECF No. 55) be

**DENIED**.

## II.   REPORT

### A.   Introduction

On August 9, 2018, Plaintiff Michael Burnett, who appears before the Court *pro se*, filed this complaint under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment. (ECF No. 1, PageID.1.) His amended complaint, which followed, alleges the same violations. (ECF No. 35, PageID.176.) He includes an allegation of a civil conspiracy among Defendants. (*Id*. at PageID.180.)

All pretrial matters were assigned to the undersigned magistrate judge on June 3, 2020. (ECF No. 17.) Defendants Eelbode and Warren, only, filed the instant Motion for Summary Judgment on June 26, 2020, (ECF No. 49), to which Plaintiff responded and Defendants replied. (ECF Nos. 61, 62.) Defendants filed an accompanying Motion to Seal with the Motion for Summary Judgment. (ECF No. 48.) Plaintiff has pending several Motions of his own: a Motion to Compel Discovery, (ECF No. 44), a Motion for Leave to File a Second Amended Complaint, (ECF No. 53), and finally a Motion for Civil Contempt (ECF No. 55.) Below, I summarize the instant Motions, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

### B.    Factual Background

In the operative complaint, Plaintiff alleges that Defendants violated the Eighth Amendment. (ECF No. 35, PageID.176.) Plaintiff sues P. Warren, the warden at the Macomb facility, in his official capacity; Kevin Herron, a corrections officer at the Macomb facility, in his individual capacity; Kristy Eelbode, a psychologist at the Macomb facility, in her individual capacity; and Jane Does 1 & 2, corrections officers at the Macomb facility, in their individual capacities. (ECF No. 35, PageID.177.)

Plaintiff alleges that on December 28, 2017, Doe 1 "smeared feces" on him. (*Id*.) He informed Herron and Doe 2 that he would be filing a grievance based on Doe 1's actions. (*Id*.) Herron allegedly stated that he had "no problem" with the supposed actions by Doe 1. (*Id*.) Later that day, Herron allegedly, with the assistance of Doe 1, forced Plaintiff to ingest feces. (*Id*.) Plaintiff claims that Herron and Doe 1 continue to force Plaintiff to ingest feces "every time the two of them are on the safety systems in Housing Unit 5, which is frequently. At least, three times a week." (*Id*. at PageID.178.)

Plaintiff claims that he told his assigned psychologist, Eelbode, about this conduct on January 23, 2018: "[she] said to me, because she know [sic] those officers, that she refused to believe that they would do something like that." (*Id*.)  Plaintiff alleges Eelbode told him because he is diagnosed with paranoid schizophrenia he must be suffering from a delusion; Plaintiff acknowledges that he takes prescribed antipsychotic medications for his mental illness, although he claims that he "never had a mental health crisis that warranted emergency intervention, as a result of being delusional." (*Id*.) Plaintiff alleges that Eelbode "covered up" the conduct of Herron and Doe 1 and falsified his mental health records by providing in his records that he is delusional. (*Id*.)

Due to the alleged conduct of Herron and Doe 1 Plaintiff claims he is in imminent danger of physical injury. (*Id*. at PageID.179.) In terms of relief, Plaintiff requests compensatory damages no less than $50,000 against each defendant and punitive damages in the same amount. (*Id*. at PageID.181.)[1] In the present Motion, Defendants

---

[1] I note that Plaintiff also includes a request for relief in the form of "preliminary injunction ordering defendant warden Warren to report to the Michigan State Police that the defendant(s) [] forced me to ingest their waste [] and attempted to cover it up by falsifying my mental health records." (ECF No. 35 at PageID.181.) Although he requests this as relief, he does not appear to have a filed a motion for a TRO or

Eelbode and Warren argue that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint and that they are thus entitled to summary judgment. (ECF No. 49.) They also argue that Plaintiff's conspiracy theory is not adequately pled, his Eighth Amendment claim against Eelbode is a dispute of diagnosis, and that his official capacity claim against Warren is moot because Plaintiff has been transferred from the Macomb facility. (*Id.*)

### C.    Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

_____

other preliminary injunction, and this Court will therefore not construe one at this time.

Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of

law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)

(quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248.

### D.    Governing Law

#### 1.    PLRA

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response

to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81,

83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of

nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude

consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007).

Congress equipped the PLRA with several mechanisms designed to reduce the quantity

and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of

the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought

with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A

centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an

'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524

(2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to

include "all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies mandate requires both (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford*, there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.* "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies—specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). The *Jones*

Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). *See also* MDOC PD 03.02.130 (eff. March 18, 2019) ("Information provided shall be limited to the facts involving the issues being grieved (i.e., who, what, when, where, why, how.) Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(S) (eff. March 18, 2019)).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

## 2.    MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. July 9, 2007); MDOC PD 03.02.130 (eff. March 18, 2019).[2] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless

---

[2] Although the MDOC policy effective March 18, 2019 supersedes the July 9, 2007 policy, some of Plaintiff's grievances were filed before March 18, 2019; I will refer to the 2007 policy in this section.

prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P) (eff. July 9, 2007).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V) (eff. July 9, 2007). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X) (eff. July 9, 2007). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R) (eff. July 9, 2007). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB) (eff. July 9, 2007). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF) (eff. July 9, 2007). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG) (eff. July 9, 2007). *Woodford* and *Jones* require inmates to file

grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E.    Analysis

Defendants Eelbode and Warren argue Plaintiff's failure to exhaust administrative remedies against them as a defense to Plaintiff's claims. (ECF No. 49.) Defendants argue that between December 28, 2017, and July 15, 2019, Plaintiff filed thirty-four grievances through Step III of the grievance process, of which only six were received and responded to prior to the filing on the first complaint in this action. (*Id*. at PageID.280; *see also* Exhibit D to ECF No. 49.) These six grievances are attached to Defendants' Motion as Exhibits E through J.

Plaintiff's six applicable grievances appear to have concerned the following alleged events and individuals. In Exhibit E, Plaintiff grieves unnamed officers assigned to the safety systems of the MDOC who alleged physically attacked Plaintiff by forcibly seizing his head and threatening to break his neck. (ECF No. 49, Exhibit E, PageID.326-329.) In Exhibit F, Plaintiff complains about his grievances being denied for vagueness and alleges that an "E. Taylor" thwarted an investigation into Plaintiff's complaints. (*Id*. at Exhibit F, PageID.332-333.) This grievance was also denied as vague. (*Id*.) Exhibit G alleges that officers "Sherrell and Wright" conducted a "shake down" of Plaintiff's cell and removed his legal file folder as well as several grievances. (*Id*. at Exhibit G, PageID.336.) The grievance in Exhibit H complains that an article Plaintiff authored "against a food service vendor" was improperly rejected as a security threat and refers only to a "Ms. Campbell." (*Id*. at Exhibit H, PageID.341-342.) In Exhibit I, Plaintiff

names Eelbode and Herron. He writes in his Step III grievance, which was denied because it was untimely filed, "K. Eelbode lied in her response – prison staff assigned to the MDOC safety systems can conceal their identities (but they are not invisible) – I was assaulted by prison staff and Officer Herron, who was assigned to the Block, the safety systems are being used maliciously to cause me harm – I am not delusional[.]" (*Id.* at Exhibit I, PageID.346.) He further alleges that Eelbode, with "psychiatrist George," was submitting false entries in his mental health records. (*Id.*) Prior to that grievance, his Step II grievance indicated that "Officer Herron and ___ (unknown) knew that the officer assigned to the safety systems were able to conceal their identities had entered into the housing unit 5 and assaulted me with feces." (*Id.* at Exhibit I, PageID.348.) The Step I grievance report concluded that Plaintiff suffered "a fixed delusion rooted in an issue of mental health" and was signed by Eelbode. (*Id.* at Exhibit I, PageID.349.) Finally, in Exhibit J, the grievance alleges interference with Plaintiff's legal mail. (*Id.* at Exhibit J.)

Defendants argue that Plaintiff has not exhausted his administrative remedies as to Eelbode or Warren. Relying on *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (quotation marks omitted), they argue "[a]s long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." (ECF No. 49, PageID.283 (citing *Burnett*, 2010 WL 1286256, at *1.)) None of the grievances, upon my review, mention Warren, and Plaintiff's only grievance that mentions Eelbode, Exhibit I, was denied as untimely.

Defendants posit that "an untimely filed grievance does not fulfill the exhaustion requirements." (*Id*. (citing *Woodford*, 548 U.S. at 97.))

In *Woodford*, the Supreme Court thoroughly analyzed this precise issue. *Woodford*, 548 U.S. at 93-96. There, the prisoner-respondent filed a grievance which was rejected as untimely "because it was not filed within 15 working days of the action being challenged." *Id*. at 87 (citing the applicable California exhaustion regulations, Cal. Code Regs., tit. 15, §§ 3084.3(c)(6), 3084.6(c)). The District Court granted petitioners' motion to dismiss because respondent had not fully exhausted his administrative remedies, a decision which was ultimately upheld by the Supreme Court. After considering the language and purpose of the PLRA, the Supreme Court reasoned that an untimely filed grievance must not be properly exhausted:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id*. at 95.

The Sixth Circuit, following this reasoning, has granted summary judgment based on improper exhaustion where grievances were untimely filed. In *Cook v. Caruso*, 531

Fed. Appx. 554, 561-563, (6th Cir. 2013), the Sixth Circuit held that "Cook did not receive merits-based responses to his second grievance at any step in the grievance process" and "[t]herefore, Cook's second grievance failed to exhaust the prison's administrative remedies afforded by its grievance procedure." *Id.* at 563. *See also Gardner v. Michigan Dep't of Corr.*, No. 18-1609, 2018 WL 8454299, at *4 (6th Cir. Dec. 18, 2018) (holding that where a grievance was untimely filed, and was thus rejected for procedural reasons, it did "not suffice to exhaust Gardner's claims.")

This standard and reasoning applies in this case, too. In Exhibit I, which contains the grievance that names Eelbode, the response to that grievance at Step III includes the following language: "In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was to be received by March 13, 2018, however it was not received until March 27, 2018." (ECF No. 49, Exhibit I, PageID.345.) Indeed, PD 03.02.130 dictates that "[t]o file a Step III grievance, the grievance must send [the proper form] to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions." MDOC PD 03.02.130(FF) (eff. July 9, 2007). As in *Woodford*, *Cook*, and *Gardner*, I suggest that this grievance, which was filed untimely at the Step III level, did not properly exhaust Plaintiff's administrative remedies. Unfortunately for Plaintiff, this is the only grievance that names Eelbode or refers to any of the conduct complained of in this case. Pursuant to MDOC

policy, to be properly exhausted, even a timely-filed grievance must include the following

information:

> The issues should be stated briefly but concisely. Information provided is to
> be limited to the facts involving the issue being grieved (i.e., who, what,
> when, where, why, how). Dates, times, places and names of all those
> involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R) (eff. July 9, 2007). Plaintiff's other grievances do not mention

Eelbode or Warren, and as discussed, the only grievance that does mention Eelbode was

not properly exhausted.

I acknowledge that "[t]he purpose of a grievance is to give prison officials fair

notice of the conduct that underlies the Plaintiff's legal claim." *Salami v. Trumbly*, No.

19-11558, 2020 WL 6389839, at *3 (E.D. Mich. Sept. 4, 2020) (citing *Jones v. Bock*, 549

U.S. at 219 ("'We are mindful that the primary purpose of a grievance is to alert prison

officials to a problem, not to provide personal notice to a particular official that he may be

sued; the grievance is not a summons and complaint that initiates adversarial litigation'")

(quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)); *Green v. Miller*, 2014

WL 1846063, at *4–5 (E.D. Mich. May 8, 2014) ("As the Sixth Circuit has explained, the

exhaustion requirement does not require a prisoner's grievance to allege a specific legal

theory or facts that correspond to all the required elements of a particular legal theory.

Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials

fair notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's complaint.")

(citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), abrogated in part on other

grounds by *Jones*, 549 U.S. at 217.). However, unlike the Plaintiff's grievances in *Salami*, Plaintiff's Step II grievance here did not mention Eelbode or Warren and did not put Defendants on notice of the alleged wrongdoing, even before the untimely filing. Thus, the only alert Defendants had to the allegations against Eelbode were in the Step III, which was filed beyond the deadline per this "particular institution's administrative rules and regulations regarding prisoner grievances." *Salami*, 2020 WL6389839, at *2.

Based on the foregoing analysis of Plaintiff's grievances, it does not appear that Plaintiff has fully grieved the allegations complained of against Defendants Eelbode or Warren. "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas*, 757 F. Supp. 2d at 492. Plaintiff has not presented evidence that a genuine issues of material fact exists as to his grievance against Defendants Eelbode or Warren and, as the non-moving party, has failed to adequately respond to the present summary judgment motion; a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Finally, based on the foregoing analysis, I decline to analyze Defendants' alternative arguments and defenses regarding Plaintiff's conspiracy claim, his Eighth Amendment claims, or his official capacity claim; regardless of whether these defenses are meritorious, the claim is not properly brought at this time as it has not been exhausted. Plaintiff's failure to exhaust sufficiently supports the Motion as to both Eelbode and Warren. I recommend Defendants' Motion be granted.

### F.    Additional Pending Motions

Next I will address the four remaining pending Motions brought by Plaintiff and Defendant. Along with their Motion for Summary Judgment, Defendants filed a Motion to Seal. Plaintiff filed a Motion for Leave to File a Second Amended Complaint, a Motion to Compel, and a Motion for Civil Contempt.

### i. Defendants' Motion to Seal

Along with their Motion for Summary Judgment, which included as evidence Plaintiff's mental health records, Defendants filed a Motion to Seal Exhibit B—the exhibit containing the medical records. Regardless of whether a motion to seal is unopposed, as it appears to be in this case, the Court must determine whether any proposed sealing comports with the standards articulated in our Local Rule (LR) 5.3 and Sixth Circuit precedent, *i.e.*, *Shane Gp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), *Beauchamp v. Fed. Home Loan Mortgage Corp.*, 658 Fed. App'x 202 (6th Cir. 2016), and *Rudd Equipment Co. v. John Deere Const. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016).

Under LR 5.3, if certain procedures are followed, documents that are authorized to be filed under seal by a statute or rule, may be filed under seal without a court order. LR 5.3(a). All other documents may not be sealed except by court order. LR 5.3(b). Under LR 5.3(b), a person seeking to file a document under seal in a civil case must file and serve a motion to authorize sealing that is narrowly tailored. LR 5.3 requires several other specifications be included in the motion, including noting any third-party privacy interests and "a detailed analysis, with supporting evidence and legal citations" for their position. LR 5.3(b)(ii), (iv).

The Court's duty then is to determine whether the motions set forth a "compelling reason why certain documents or portions thereof should be sealed." LR 5.3(b)(C)(i). The need must be compelling because of the "long recognized . . . 'strong presumption in favor of openness' regarding court records." *Rudd Equip.*, 834 F.3d at 593 (citation omitted). In determining whether a compelling reason exists, a court should "consider, among other things, the competing interests of the defendant's right to a fair trial, the privacy rights of participants or third parties, trade secrets, and national security." *Id.* A court must also "balance the litigants' privacy interests against the public's right of access recognizing our judicial system's strong presumption in favor of openness." *Id.* at 594. "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 305.

In the discovery context, courts should bear in mind the "'stark difference' between court orders entered to preserve the secrecy of proprietary information while the parties take discovery, and the sealing of the court's docket and filings: 'The line between these two stages . . . is crossed when the parties place material in the court record,' and in this latter state, 'very different considerations apply.'" *Rudd Equip.*, 834 F.3d at 593 (quoting *Shane Gp.*, 825 F.3d at 305). In order to justify the sealing of a document or a portion of a document, the party requesting sealing must provide a "compelling reason" to seal and the sealing must be "narrowly tailored to serve that [compelling] reason." *Id.* Here, because the document proposed to be sealed was filed in connection with a dispositive motion rather than in the discovery context, it has crossed the proverbial line from a discovery motion to a dispositive motion wherein "'very different considerations

apply.'" *Rudd Equip.*, 834 F.3d at 593 (quoting *Shane Gp.*, 825 F.3d at 305). Of note, LR

5.3(b) requires:

> (v) a redacted version of the document(s) to be sealed, filed as an exhibit to
> the motion, unless the proponent of filing is seeking to file the entire
> document under seal, in which case a blank sheet shall be filed as an
> exhibit. The redacted version must be clearly marked by a cover sheet or
> other notation identifying the document as a "REDACTED VERSION OF
> DOCUMENT(S) TO BE SEALED"; and
>
> (vi) an unredacted version, filed as a sealed exhibit, of the document that is
> sought to be filed under seal. Under this section the unredacted version may
> be filed under seal for the limited purpose of resolving the motion to seal
> without a prior court order. The unredacted version must be clearly marked
> by a cover sheet or other notation identifying the document as an
> "UNREDACTED VERSION OF DOCUMENT(S) TO BE SEALED
> PURSUANT TO LR 5.3(b)(3)(B)(iii)." The unredacted version must clearly
> indicate, by highlighting or other method, the portions of the document
> which are the subject of the motion.

In Defendants' Motion, they request that Exhibit B to their Motion, which contains

Plaintiff's mental health records, be sealed so as to protect Plaintiff's medical history:

what the undersigned may ordinarily consider a compelling reason to seal. However,

while Defendants filed this document under seal as a blank page per LR 5.3(b)(v), they

have not filed an unredacted version of the document to be sealed per LR 5.3(b)(vi).

Notably, 5.3(b)(vi) is followed by an "and" at the end of 5.3(b)(v)—a filer seeking to seal

a document must produce both copies, which Defendants have failed to do. The result is

that the docket contains only a blank page which one must assume stands in place of

Plaintiff's medical records, although no viewer of the docket, including the undersigned

magistrate judge, can view the actual document. Significantly, this means that neither can

Plaintiff view the document; consider *Hagopian v. Smith*, where this Court found that

"the record shows that the Plaintiff has received copies of his medical records (docket no. 119 exhibit C), and therefore will not be prejudiced by the sealing." *Hagopian v. Smith*, No. 05–CV–74025, 2009 WL 514995, at *1 (E.D. Mich. Dec. 17, 2009) (citing *Simpson v. Coleman*, No. 07–13125, 2009 WL 2448594, at *3 (E.D. Mich. August 10, 2009) (an imprisoned pro se plaintiff has no access to court documents filed under seal). In contrast, here, the docket does not reflect that Plaintiff received a copy of his medical record, and so I cannot conclude that he would not be prejudiced by this sealing. Even assuming Plaintiff did receive a copy of his medical record, the undersigned still has not had the opportunity to see the document Defendants seek to seal. Considering the "'strong presumption in favor of openness' regarding court records[,]" *Rudd Equip.*, 834 F.3d at 593 (citation omitted), and in order to protect Plaintiff's interests concerning his ability to view his own medical records, I recommend that this Motion be denied.

### ii. Plaintiff's Motion for Leave to File Second Amended Complaint

Plaintiff seeks leave to file a second amended complaint. Plaintiff's Motion is governed by Rule 15(a) of the Federal Rules of Civil Procedure. It provides:

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

(A)    21 days after serving it, or

(B)    If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a); *Berry v. Specialized Loan Servicing, LLC*, No. 2:18-cv-02721, 2020 WL 3485577, at *4 (W.D. Tenn. Feb. 24, 2020). Under this Rule, generally, a party may amend its pleading once as a matter of course, but in all other cases it may amend a pleading only with the opposing party's consent or with leave of the court. *Commerce Benefits Group, Inc. v. McKesson Corp.*, 326 Fed. App'x 369, 376 (6th Cir. 2009). Plaintiff has already exercised his right to a first amended complaint, (ECF No. 35), which is presently the operative complaint; this Motion for a second amended complaint may be granted only with the Court's discretion, which should be freely given when justice so requires.

The Court is afforded discretion in allowing amendments. *Berry*, 2020 WL 3485577, at *4 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Troxel Manuf. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970–71 (6th Cir. 1973)). While it is true that Rule 15(a)(2) instructs a court to "freely give leave when justice so requires[,]" in its discretion to allow an amendment, a court considers factors such as undue delay, repeated failure to cure deficiencies by amendments previously allowed, bad faith or dilatory motive, futility of an amended pleading and undue prejudice to the opposing party. *Berry*, 2020 WL 3485577, at *4 (citing *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006)). "Pro se litigants, while granted some leeway, must follow the same rules of procedure that govern other litigants." *Berry*, 2020 WL 3485577, at *4.

Plaintiff filed this Motion on June 20, 2020. (ECF No. 53.) In the Motion Plaintiff writes that "[d]iscovery ended in this civil matter on May 22, 2020. Plaintiff amended his complaint to add facts obtained through discovery, and set forth a more definite statement." (*Id*. at PageID.369.) Indeed, most of the proposed second amended complaint presents the same claims and factual bases as the operative complaint, and it does not add any new defendants. However, paragraphs 41 and 42 of the proposed second amended complaint, (ECF No. 54, PageID.375), add new claims against Defendants Herron and Doe 1 under the First Amendment. "Adding a new defendant and a new claim at this late stage is unduly prejudicial to Defendants." *Coates v. Juardo*, No. 12–cv–15529, 2015 WL 1510400, at *2 (E.D. Mich. Mar. 24, 2015) (citing *Duggins v. Steak 'N' Shake, Inc*., 195 F.3d 828, 834 (6th Cir.1999) (finding prejudice to defendants where the motion to amend was filed after discovery had closed); *Wade v. Knoxville Utilities Bd*., 259 F.3d 452, 459 (6th Cir.2001) ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."). Plaintiff does not offer explanation as to why these claims could not have been brought earlier—the factual basis for these new claims existed in Plaintiff's operative complaint, filed on February 19, 2020. (ECF No. 35.) Indeed, as Plaintiff himself points out, "discovery in this civil matter ended on May 22, 2020." (*See also* ECF No. 34, scheduling order.) Considering the "increased burden" at this stage, *Wade*, 259 F.3d at 459, to include two new claims nearly eight months after the close of discovery, without an adequate justification by Plaintiff, would surely prejudice Defendants. I therefore recommend denying this Motion.

### iii. Plaintiff's Motion to Compel

As to Plaintiff's motion to compel (ECF No. 44), Plaintiff argues that Defendants have failed to respond to his requests for "duty rosters." (*Id*. at PageID.231.) Plaintiff argues that Defendants have failed to produce this document, which he purports would name Does 1 and 2, by "hiding behind" a prior Report and Recommendation that recommended dismissing Does 1 and 2. (ECF No. 44, PageID.231.) But Plaintiff's objections to that Report and Recommendation were granted and Does 1 and 2 remain Defendants in this case. (*See* ECF No. 45, granting objections to the Report and Recommendation.) Defendants argue, in response to this Motion, that after "[t]his Court [] ordered the production of the duty roster[,]" (ECF No. 45), Defendant Eelbode "produced a fifteen-page punch exception report for December 27 and 28, 2017." (ECF No. 57, PageID.405) (citing ECF No. 55, PageID.383-97). Plaintiff complains that the document produced by Defendant Eelbode is not the duty roster he requested and now requests that this Court compel the discovery of his requested documents. (ECF No. 44.) Plaintiff also filed a Motion for Civil Contempt requesting that this Court hold Defendants in contempt for failure to produce the requested documents. (ECF No. 55.)

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The Court can, "[f]or good cause," compel discovery of matters relevant to the action. *Id*. Evidence is relevant if it has a "tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This prevents the "proverbial fishing expedition, in hope that there might be something of relevance." *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012).

Thus, "[t]he scope of discovery . . . is traditionally quite broad." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Discovery can be limited, however, if the Court determines it is duplicative, easier to obtain elsewhere, was already available by discovery to the movant, or that the burden and expense outweighs its benefits. Fed. R. Civ. P. 26(b)(2)(C). *See also Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 304-05 (6th Cir. 2007) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."). "Requests for production must describe with 'reasonable particularity each item or category of items to be inspected.'" *Council on American-Islamic Relations Action Network, Inc. v. Schlussel*, No. 11-cv-10061, 2012 WL 4513605, at *3 (E.D. Mich. Oct. 2, 2012); Fed. R. Civ. P. 34.

Here, Plaintiff requested what he defines as a "duty roster" and complaints that what Defendants provided, fifteen pages of information including MDOC employee names, IDs, and clock-in and clock-out times, was not what he requested. Plaintiff's discovery request, served on Defendants, sought a "duty roster" for December 28, 2017, that "he believed [] would identify the Jane Does and would then have allowed him to

proceed with his lawsuit against them." (ECF No. 45, PageID.250). The actual discovery request, dated by Plaintiff March 8, 2020, listed the information requested with minimal detail: it provided, "Produce the duty roster for (December 28, 2017)." (ECF No. 44, PageID.233.) This Court compelled the production of such documents, (ECF No. 45 at PageID.251), and Defendants produced the fifteen pages that Plaintiff now disputes as inadequate. Plaintiff requests that this Court compel the following additional information from Defendants: "documents relevant to the identities of Jane Does[,]" and elaborates that the "duty roster" should show "exactly where they were working on the morning of December 28, 2017. The morning plaintiff was assaulted with excrete waste." (ECF No. 44, PageID.231.)

It appears that Defendants have complied with the order of this Court to produce what Plaintiff originally sought: although it is not titled as a "duty roster," it includes fifteen pages of the names of MDOC employees, employee IDs, and the times of their shifts on December 27 and 28, 2017. It seems clear that Plaintiff can glean, from the produced document, which individuals were working at the times he alleges he was assaulted and can thus deduct the names of those Doe individuals. Defendants, in their response, provide that the documents produced "is a duty roster because it is a list or 'roster' of all the corrections officers at MRF who reported to work or 'duty' on December 27 and 28, 2017." (ECF No. 57, PageID.406.) Further, they argue, "[o]ther than not being titled 'duty roster,' it is not clear the basis of [Plaintiff's] claim that this is not a duty roster." (*Id*.) And finally, "Eelbode does not have in her possession, custody, or control, any documents titled 'duty roster' showing the corrections officers who worked

at MRF on December 28, 2017. The undersigned is unaware of any official MDOC documents that are entitled 'duty roster.'" (*Id*.) In support of the veracity of this document, Defendants note, and it is true, that Defendant Herron's name appears on this report with the dates December 27 and 28. (ECF No. 55, PageID.389.) Defendants argue that Plaintiff did not request, with reasonable particularity, a document that stated each corrections officer's job assignments on December 28, 2017. (ECF No. 57, PageID.406.)

Plaintiff's discovery request called for a "duty roster" for December 28, 2017, that "he believed [] would identify the Jane Does and would then have allowed him to proceed with his lawsuit against them." (ECF No. 45, PageID.250). "Requests for production must describe with 'reasonable particularity each item or category of items to be inspected.'" *Schlussel*, 2012 WL 4513605, at *3; Fed. R. Civ. P. 34. Defendants provided fifteen pages of the names and shift information for each officer on duty the day in question and is unaware of a document in the entire MDOC called a "duty roster." It seems that Defendants did try their best to provide what Plaintiff requested. Plaintiff now appears to explain that he needed information which showed precisely where, or on which job assignment, each officer was assigned that day. As previously noted, discovery closed in this case on May 22, 2020. (ECF No. 34.) I suggest that, under Rule 26, not only would compelling this additional request be duplicative of the comprehensive information already provided, but the burden of continuing the discovery process at this stage would outweigh the benefit of producing information that has, to a very large extent, already been produced. Fed. R. Civ. P. 26(b)(2)(C). I thus recommend denying this Motion.

### iv. Plaintiff's Motion for Civil Contempt

"The power to hold a party in contempt is within the discretion of the district court." *Human Rights Defense Ctr v. Bezotte*, No. 11-CV-13460, 2017 WL 1247465, at *2 (E.D. Mich. Mar. 31, 2017) (citing *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989)). "A district court may sanction parties who fail to comply with its orders in a variety of ways, including dismissal of the lawsuit." *Bezotte*, 2017 WL 1247465, at *2 (quotations omitted). "A party that moves to hold another party in contempt must prove by clear and convincing evidence that the non-movant is in violation of a 'definite and specific order of the court.'" *Bezotte*, 2017 WL 1247465, at *2 (quoting *Electric Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co*., 340 F.3d 373, 378 (6th Cir. 2003)).

Plaintiff seeks an order for civil contempt against Defendants arguing that they failed to comply with the court's order to produce Plaintiff's requested "duty roster." (ECF No. 55.) However, as discussed above, I conclude and recommend that Defendants did not fail to comply with this Court's prior order to produce the "duty roster" as requested by Plaintiff. Therefore, I suggest that this Motion should also be denied.

### G.    Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 49) be **GRANTED**, Defendants' Motion to Seal (ECF No. 48) be **DENIED**, Plaintiff's Motion to Compel (ECF No. 44) be **DENIED**, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 53) be **DENIED**, and finally, Plaintiff's Motion for Civil Contempt (ECF No. 55) be **DENIED**.

III.  **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 12, 2021

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge